# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| P.E.D.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-25-356-SM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff P.E.D. brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 11, 12.[2]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law

---

[1]    The Court refers to Plaintiff by initials only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

Judge's (ALJ) residual functional capacity[3] (RFC) assessment is unsupported by substantial evidence and the ALJ erred in evaluating his obesity. Doc. 13, at 4, 10. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Administrative determination

### A.    Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

---

[3]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such job exists in the national economy. *Id.*

### C.   Relevant findings.

#### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 20-29; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1) had not engaged in substantial gainful activity since September 17, 2022, the alleged onset date;

(2) has the following severe impairments: mild-to-moderate acromioclavicular joint arthropathy of the right shoulder, ununited fracture of the fibular head of the left knee, lumbar degenerative disc disease, hypertension, and obesity;

(3) has no impairment or combination of impairments that meet or medically equal the severity of a listed impairment;

(4)     has the RFC to perform light work—meaning he can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; he can sit for six hours during an eight-hour workday; he can stand or walk for six hours in an eight-hour workday—but with the following limitations: he can only occasionally climb; he can frequently stoop, kneel, crouch, or crawl; he can frequently reach overhead with his right arm; and he must avoid all exposure to unprotected heights;

(5)     is able to perform his past relevant work as a chef, Dictionary of Occupational Titles (DICOT) Code 313.131-014, as actually and generally performed; a sales clerk, DICOT Code 290.477-014, as actually and generally performed; and a retail store manager, DICOT Code 185.167-046, as generally performed—all of which exist in significant numbers in the national economy;

(6)     was not under a disability from January 31, 2023, through June 18, 2024.

AR 20-29.

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 1-3, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005))); *Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance").

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (citation modified). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (citation modified).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### III. Analysis.

Plaintiff claims: (1) substantial evidence does not support the ALJ's RFC assessment; and (2) the ALJ did not properly consider Plaintiff's obesity under Social Security Ruling 19-2p, SSR 19-2p, 2019 WL 2374244 (May 20, 2019).

### A. Substantial evidence supports the ALJ's RFC assessment is supported.

Plaintiff claims the ALJ's RFC assessment is unsupported by substantial evidence because: (1) the ALJ improperly considered the evidence; and (2) the ALJ's RFC assessment lacked a corresponding medical opinion. Doc. 13, at 4-10.

### 1. The ALJ's consideration of the evidence.

Plaintiff argues the ALJ improperly discounted his allegations of shoulder, knee, and lower back pain by: (1) impermissibly picking and choosing among Plaintiff's medical records; (2) disregarding his lack of health insurance as a reason for his minimal treatment; and (3) considering his receipt of unemployment benefits. *Id.* at 5-10.

#### a. The ALJ properly evaluated Plaintiff's allegations of pain.

In assessing Plaintiff's RFC, the ALJ discounted his allegations of shoulder, knee, and lower back pain. AR 23; *see also id.* at 54-61. Under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), an ALJ evaluates complaints of disabling pain as follows:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64); *see* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). That is what the ALJ did here. She evaluated Plaintiff's allegations of pain, deciding they were supported by objective medical evidence with a loose nexus to the pain described but claimant's pain was not disabling.

As to Plaintiff's shoulder pain, the ALJ explained that although Plaintiff "reported shoulder pain consistent with limited range of motion on examination and his allegations of pain made when receiving treatment," "he had normal hand grip strength and upper extremity strength during his recent consultative examination." AR 23. Although he "testified to knee pain, consistent with imaging showing ununited fracture of the fibular head," his "gait was normal" and he "did not use and assistive device." *Id.* And although his allegations of back pain are "consistent with imaging confirming lumbar degenerative disc disease," "he ambulated without difficulty." *Id.* "[D]isability requires more than the mere inability to work without pain." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986). Plaintiff has not shown that the ALJ improperly evaluated his pain.

Plaintiff also argues the ALJ engaged in impermissible picking and choosing. Doc. 13, at 5-6. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). While "an ALJ is not required to discuss every piece of evidence," she must "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R.

8

§§ 404.1520(a)(3), 416.920(a)(3) ("We will consider all evidence in your case record . . . .").

Plaintiff's consultative examination showed limited range of motion in Plaintiff's shoulders; inability to fully squat, along with an x-ray showing a fibular fracture in his knee; and limited range of motion in his spine confirmed by x-ray showing disc narrowing. AR 516-19. Plaintiff says the ALJ erred by acknowledging these findings but "somehow equat[ing] a normal gait and no assistive device with the ability to then stand on his feet for six hours per day and frequently . . . be capable of crouching or stooping." Doc. 13, at 5-6. He does not, however, point to any uncontroverted evidence the ALJ overlooked. Rather, the record shows the ALJ resolved conflicts in the medical evidence, as was her prerogative. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); *see also Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (stating federal courts may not "displace the agency's choice between two fairly conflicting views" (citation modified)).

Finally, Plaintiff argues the ALJ erred by failing to discuss the edema shown at his consultative examination. Doc. 13, at 6; AR 515. Plaintiff testified at the administrative hearing that he experiences edema in both legs and has to "lay down and put [his] feet up a certain way" after any "extenuating" activity. AR 56-57. He does this overnight, and he reported the swelling

"subsides by morning time," though his legs "swell right back up" as soon as he "put[s his] feet back down." *Id.* at 57. The ALJ discussed Plaintiff's edema in the context of his reported tenderness and limited range of motion. *Id.* at 24. Although the ALJ did not describe Plaintiff's mechanism for reducing the swelling—elevating his feet overnight—the ALJ need not discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Given the ALJ's extensive discussion of Plaintiff's edema and his related cardiovascular metrics, Plaintiff's argument that "[t]he ALJ does not address the edema or elevation at all in the decision" is unavailing. Doc. 13, at 6.

### b. Plaintiff's lack of health insurance.

Plaintiff next argues the ALJ disregarded his lack of insurance as a barrier to treatment leading to a scant medical record, urging that the ALJ should have asked about his ability to obtain medical assistance as part of her duty to develop the record. *Id.* at 6-7; Doc. 17, at 2-3 (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). The ALJ may compare "the frequency or extent of the treatment sought" to a claimant's subjective complaints and may also consider treatment compliance. SSR 16-3p, 2017 WL 5180304, at *9. Generally, though, "inability to pay may provide a justification for a claimant's failure to seek

treatment," *Threet v. Barnhart*, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003), and the ALJ must consider any reasons for failing to consistently pursue treatment before drawing any adverse inferences, SSR 16-3p, 2017 WL 5180304, at *9-10. That is what the ALJ did here.

The ALJ noted Plaintiff's lack of health insurance in the context of his minimal treatment for anxiety and depression. AR 23. Having considered this, the ALJ was within her discretion to consider Plaintiff's conservative treatment for shoulder pain after a car accident and Plaintiff's noncompliance with his hypertension treatment. *Id.* at 24-25. The ALJ properly considered the extent of Plaintiff's attempts to relieve his symptoms "in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).[4]

---

[4] Plaintiff does not argue that the ALJ disregarded the prerequisite factors for relying on a claimant's failure to pursue treatment. "[B]efore the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citation modified). Plaintiff argues only that the ALJ did not consider the fourth factor—whether his minimal treatment was justified by his lack of health insurance. Doc. 13, at 6-7; Doc. 17, at 2-3.

### c.     Plaintiff's receipt of unemployment benefits.

Finally, Plaintiff disputes the ALJ's consideration of Plaintiff's unemployment benefits. Doc. 13, at 9-10. The ALJ explained that "[a]lthough receipt of unemployment benefits does not preclude a finding of disability, generally speaking, one must certify that he is ready and able to work in order to receive these benefits, which is not fully consistent with a finding of disability." AR 24. The ALJ was within her discretion to consider Plaintiff's "collection of unemployment benefits, which required [him] to attest that []he was ready, willing, and able to work." *Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014).

Plaintiff argues the ALJ failed to consider circumstances "whereby he could qualify for disability benefits under the guidelines even though he may remain capable of sedentary work for which he could claim unemployment benefits." Doc. 13, at 10 (quoting *Smith v. Colvin*, 2014 WL 4185433, at *8 (D. Kan. Aug. 22, 2014)). He does not describe what circumstances he believes would allow for overlapping benefits in his case, though; that is, he does not propose a view of the medical evidence that would allow him to collect both unemployment benefits and the Social Security benefits he seeks here under the respective laws. *Compare Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999) (holding that a claim for Social Security Disability

12

Insurance Benefits is not incompatible with a claim for reasonable accommodation under the Americans with Disabilities Act, explaining "the two claims do not inherently conflict . . . because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side"). His argument fails.

### 2. The RFC assessment need not correspond with a medical opinion.

Plaintiff argues his RFC assessment is unsupported by substantial evidence because it does not correspond with a medical opinion of record, as the state agency medical consultants found insufficient evidence to determine disability. Doc. 13, at 7-9; *see also,* AR 75-77 (state agency medical consultants' findings of "Not Disabled" due to insufficient evidence after Plaintiff "failed to return forms after multiple attempts to reach [him]"). Plaintiff suggests the RFC amounts to a medical opinion, which the ALJ is not qualified to render. Doc. 13, at 7-8 (citing *Cowen v. Kijakazi*, No. CIV-22-73-STE, 2023 WL 185104 (W.D. Okla. Jan. 13, 2023)).

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); *see also* Doc. 16, at 13-14. And the RFC need not line up with a medical opinion. *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012). As

13

explained above, the ALJ's RFC assessment is well supported by substantial medical evidence. Although it may be inappropriate for the ALJ to reach an RFC assessment without expert medical assistance when the medical opinion seriously conflicts with a medical opinion of record, *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013), that is not the case here.

The Court finds that substantial evidence supports the ALJ's RFC assessment.[5]

### 3. Conclusion.

Plaintiff fails to carry his burden to show the ALJ's opinion is unsupported by substantial evidence.

### B. The ALJ properly considered Plaintiff's obesity.

Plaintiff claims the ALJ improperly evaluated his obesity under Social Security Ruling 19-2p, which requires that an ALJ "must consider the limiting

---

[5] Plaintiff also briefly argues the ALJ did not undertake a function-by-function assessment required by Social Security Ruling 96-8p. Doc. 17, at 6 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)). Plaintiff does not point to any functions the ALJ overlooked. The ALJ's RFC assessment linked Plaintiff's ability to stand or walk for six hours of the workday to his lack of assistive device and his "normal gait, station, and normal lower extremity strength." AR 25. The ALJ linked Plaintiff's ability to occasionally climb and frequently stoop, kneel, crouch, and crawl to his "limited range of motion throughout the spine, lower extremity swelling noted at times, left knee and right shoulder limits in range of motion demonstrated during his consultative examination and complaints of pain noted during the hearing." *Id.* at 25-26. Plaintiff's argument fails.

effects of obesity when assessing a person's RFC" and "explain how [he] reached [his] conclusion on whether obesity causes any limitations." 2019 WL 2374244, at *4; Doc. 13, at 10-13. Under that ruling, the ALJ does "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)" but "evaluate[s] each case based on the information in the case record." 2019 WL 2374244, at *4. "Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2.

After detailing Plaintiff's body mass index and blood pressure, the ALJ stated,

> Consistent with SSR 19-2p, the undersigned has considered the evidence and finds there are functional limitations caused by the medically determinable impairment of obesity. However, the undersigned did not make general assumptions about the severity or functional effects of obesity combined with another impairment, but this specific case has been evaluated based on the information contained in the case record.

AR 25. The ALJ included limitations in Plaintiff's RFC to account for his combined impairments, including that he can only occasionally climb and must avoid all exposure to unprotected heights. *Id.* at 25-26.

Plaintiff argues the ALJ cited no medical evidence to show that he "could *ever* climb ladders, ropes, and scaffolds or *ever* be in a work environment where he is exposed to hazards." Doc. 13, at 12. To the contrary, the ALJ relied on the

15

lack of any "indication that he consistently used or was prescribed an assistive device for ambulation" and his "examinations showing normal gait, station, and normal lower extremity strength." AR 25. Ultimately, though, none of Plaintiff's past relevant work as generally performed requires climbing, balancing, kneeling, or crawling, and only sales clerk requires occasional stooping and crouching. *See* Retail Store Manager, DICOT Code 185.167-046; Sales Clerk, DICOT Code 290.477-014; Chef, DICOT Code 313.131-014; *see also Kirkpatrick v. Colvin*, 663 F. App'x 646, 648-49 (10th Cir. 2016) (rejecting argument that RFC was flawed because ALJ failed to consider plaintiff's COPD-related inability to be exposed to environmental pollutants in part because "none of the jobs identified by the [vocational expert] require exposure to temperature extremes, atmospheric conditions, or toxic caustic chemicals").

Plaintiff therefore fails to carry his burden to show that the ALJ's opinion does not comply with SSR 19-2p.

### IV. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 19th day of September 2025.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE